## MARQUIS D. TODD v. CYRUS EVERETT.

*Principal and agent—Payment.*

1. Where after the purchase from a brick company of the brick upon its yard, burned and unburned, the vendee allows the president of the corporation to manage the yard and sell brick as his agent, and collect the proceeds of such sales, he becomes such an agent that his contracts are binding upon the vendee if made in the due course of the business; and payments made to such agent by a purchaser of brick who had no knowledge of the change of possession under said first-named purchase are binding upon the principal.

2. Where, in such a case, the agent at one time agreed to receive wood of a purchaser to apply on the amount due for brick, and directed him to deliver the wood to a specified third party, but before such delivery countermanded the direction, and ordered the purchaser not to make such delivery, which he did notwithstanding such countermand, this cannot be considered as a delivery to the agent, and it is immaterial that the agent did not forbid the third person from taking the wood.

Error to Ingham. (Peck, J.) Argued November 1, 1889. Decided December 28, 1889.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Cahill & Ostrander,* for appellant.

*Kilbourne & Humphrey,* for defendant.

[The briefs of counsel are confined to a discussion of the evidence, no authorities being cited.—REPORTER.]

MORSE, J. The plaintiff brought suit in *assumpsit* upon the common counts, in the Ingham circuit court, and filed the following bill of particulars:

"CYRUS EVERETT,
"To M. D. TODD, Dr.
"To 84,900 brick at $4.50 per thousand, sold and
delivered to and accepted by defendant, be-
tween March 14 and May 19, 1887 _____ $382 05"

The defendant pleaded the general issue, and gave notice that he would prove that he purchased the brick of one John Jordan, president of the Lansing Brick & Tile Company, who sold the said brick with the full knowledge, consent, and authority of the plaintiff, and that the amount claimed in the suit for the said brick was paid to said Jordan according to the terms of said purchase. The defendant had verdict and judgment in the court below.

Upon the trial the amount and value of the brick delivered and received by the defendant was agreed upon, and it was consented that the amount to be settled by the verdict of the jury, the payment of which was in dispute, was the sum of $178.25. The court charged that the burden of proof was upon defendant to show that he had made a lawful payment of this amount. The plaintiff claims that a verdict ought to have been directed in his favor, and also alleges other errors in the admission of testimony and in the charge of the court.

A brief statement of the claims of the respective parties, as shown by the proofs, is necessary. The plaintiff testified that he bought the brick of the Lansing Brick & Tile Company on August 28, 1886, and took a bill of sale executed by John Jordan, as president of the company. The bill of sale recited a consideration paid by plaintiff of $3,500, and by its terms sold and conveyed to him—

"All the stock of manufactured brick now on the yard of the said company at Lansing, amounting now to 1,700,000 brick, about 4-10 sword brick, 3-10 Penfield brick, 3-10 sand brick, belonging to said company, and now in its possession at Lansing."

That he caused the delivery of the brick to defendant, who made some payments to him towards them; that defendant afterwards claimed an offset to the bill; said that John Jordan owed him; that plaintiff told him:

"I can't help that. If John Jordan owes you, you can get your pay of John Jordan. I can't pay his debts."

After this conversation, plaintiff claims that defendant made two payments on the brick.

The plaintiff under this contract only paid for 1,500,000 brick, there being some reserved, that had been sold before the bill of sale was made, and which were piled up on the yard. He only paid $3,000 for the brick. He testified, on cross-examination, that all the brick were sold either by himself or by Jordan, who was his agent for that purpose, and to whom he paid 65 cents per thousand for selling them; that until April, 1887, Jordan did the selling and collecting, except as Todd himself collected, or money was paid to him directly; that Jordan sold to defendant; that the brick were worth from $4.25 to $4.50 per thousand; that plaintiff did not sell any brick until Jordan went away; that he would have made a nice thing out of it, if there had been 1,500,000 brick; that they fell short, and he never received his purchase money back; that there was an arrangement between himself and Jordan by which, after selling the brick, the money received over and above the $3,000, and the 65 cents per thousand for selling, was to be divided between them. He did not tell Everett, or any one else, that he owned these brick, but claims that Everett knew he owned them. He further testified that the 1,700,000 brick mentioned in the bill of sale were all the brick upon the yards as estimated at the time it was made, and that it was intended to cover all the brick in the yard, whether fully manufactured or not,—the unburned as well as the

burned brick,—and, at the end of the burning season in 1886, all the brick were considered and treated as the property of plaintiff.

The defendant testified that he contracted for the brick with Jordan in November, 1886. Jordan came to him, and wanted to buy some dry wood. Defendant wanted some brick, and made an arrangement to deliver to him 100 cords of wood and 200 bushels of corn, and take it out in brick. Also sold him some wood that he had on hand. The brick were to be delivered in the spring. Defendant delivered the wood to Jordan, and nearly all the corn,—all that Jordan wanted; also delivered him some oats. He did not know that Todd had anything to do with the brick until May 13, 1887, when plaintiff sent him a bill for them. He then informed plaintiff of the arrangement he had made with Jordan. Plaintiff said he would allow him for the corn, but he would not apply the wood. Defendant testifies that plaintiff said he had advanced money on the brick, and did not think he would be able to get it all out. On cross-examination defendant testified that he did not deliver the 100 cords of wood to Jordan personally, but to one Stabler. Claims that Jordan told him he had sold it to Stabler, and to deliver it to him, but, before Stabler had taken the wood, Jordan came to him again, and told him not to let Stabler have it; nevertheless, he delivered it to Stabler. This wood came to $125. Stabler, against objection, testified that he bought the wood of Jordan, and that Jordan never objected to his getting it,—never made any objection to him; that the only objection made was by defendant, who said that Jordan had told him not to deliver it.

There was also testimony on the part of the plaintiff tending to show that the brick were turned over to plaintiff by the Brick & Tile Company before the defend-

ant made his arrangement with Jordan, and that he had taken possession of them; but no one notified defendant of this change of possession, and there is no evidence that he knew of it. Defendant made a cash payment to plaintiff of the balance due over and above the value of the corn, oats, and wood delivered to Jordan, as he claims, at Jordan's direction. If the payments in grain and wood and some small items are allowed, the brick were fully paid for.

Upon these facts the plaintiff claimed that his title to the brick was an absolute one, and that he was entitled to have a verdict for the balance, $178.25, directed by the court; if not, that he was at least entitled to the following requests which his counsel submitted:

"2. When in November, 1886, the time defendant claims the bargain was made, all the brick on the yards of the Lansing Brick & Tile Company had been turned over to Mr. Todd as his brick, and Todd had taken possession of them, the bargain made in November could not affect the title to these brick, and defendant must pay for them to Mr. Todd.

"3. If there was a substantial falling off in the quantity of brick estimated to be on the yard when the bill of sale was made to Todd, it was the duty of the Lansing Brick & Tile Company to make the shortage good.

"4. There was not, and has not been, a delivery of the 100 cords of wood to Jordan. Everett has placed the wood where Mr. Jordan cannot get it. He has given the wood, contrary to Mr. Jordan's instructions, to Mr. Stabler."

The defendant claimed that, under the arrangement to which the plaintiff himself testified on cross-examination, the bill of sale was not absolute, but simply a security for the payment of the $3,000 advanced to Jordan, and therefore a mortgage, and that the plaintiff could not maintain *assumpsit* for the brick sold by Jordan, the mortgagor apparently being in possession. He also claimed that the bill of sale included nothing but brick manufact-

ured at its date, and that quite an amount of the brick purchased and received by him were pressed and burned after the bill of sale was given. Even if Todd was found to be the absolute owner of all the brick, the fact that Jordan was selling all the brick, and running the yard apparently the same as he had before, the defendant claims, would justify him in making payments to Jordan, from whom he purchased the brick.

The court charged the jury that, if the title of Todd was not absolute in the brick, he could not recover in this particular action the balance alleged to be due. This was erroneous. Under the showing of plaintiff, which was not disputed by any testimony, he was the absolute owner of all the brick. If the brick exceeded a certain amount, then he and Jordan were to divide the proceeds of the balance between them; but the brick did not reach that certain amount, and the whole of the brick had been turned over to plaintiff before the sale to defendant, and he was in the possession of the same. But the defendant did not know of this change of possession, and it appears from the testimony of the plaintiff that while Jordan remained he (Jordan) managed the yard and sold the brick, as plaintiff's agent, at 65 cents per thousand. Jordan not only sold brick, but collected the proceeds of his sales, and was permitted and authorized to do so by plaintiff. Jordan was therefore such an agent that his contracts were binding upon plaintiff if made in the due course of the business. The corn was delivered at the yard, and plaintiff was at one time willing to receive it upon the brick. The wood was wood ordinarily used in the burning of brick, and the only question as to its applicability upon the contract for brick was the fact of its delivery.

The fourth request of the plaintiff should have been given. The wood was never delivered to Jordan. It was

left where it was cut. Jordan at one time told defendant to deliver it to Stabler, but before it was so delivered he countermanded this direction, and ordered defendant not to let Stabler have it. The defendant, if he did not deliver it to Stabler, permitted him to take it in violation of Jordan's express command. This could not be considered a delivery to Jordan. The fact that Jordan never told Stabler not to take the wood, cuts no figure. Stabler knew when he took the wood, and so testifies, that Jordan objected to his taking the wood, and that he had notified defendant not to let him have it. The testimony of defendant and Stabler shows no right in Stabler to take it. There is an account of $10 for dry wood, which, under the testimony of defendant, should be applied upon the brick. There were several other little items claimed as payments which were properly submitted by the court to the jury.

The second request of the plaintiff was properly refused in the shape it was presented, but we think that the evidence fairly showed, and was practically undisputed, that all the brick, burned and unburned, were turned over to the plaintiff before defendant made his bargain with Jordan, and that, therefore, the plaintiff was entitled to recover of defendant the value of the brick, less the payments that were made in good faith to Jordan. All these items of payment were properly submitted to the jury, except that of the 100 cords of green wood, which should have been excluded.

Under the evidence as shown in the record before us, the question of manufactured or unmanufactured brick became immaterial, and there was no necessity of burdening the jury with it. If, as the testimony showed without contradiction, the Lansing Brick & Tile Company turned the yard and all the brick thereon over to plaintiff, before defendant bought or bargained for his brick,

then whether the brick received by defendant were burned or unburned, at the time the bill of sale was made, was entirely immaterial.

The judgment will be reversed, and a new trial granted, with costs of this Court to plaintiff.

The other Justices concurred.